Filed 1/8/26  P. v. Sohal CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052523 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. B9737306) |
| v. | |
| MANJINDER SINGH SOHAL, | |
| Defendant and Appellant. | |

Defendant Manjinder Singh Sohal was deported in 2013 after serving a 15-year prison term for attempted murders among other related crimes.  Ten years later, he moved to vacate his convictions under Penal Code section 1473.7 and now appeals the denial of that motion.[1]  Sohal argues that the record demonstrates that he did not meaningfully understand the immigration consequences of his plea and that the error was prejudicial.  Independently reviewing the trial court's findings and order, we will affirm.

## I.    BACKGROUND

### A.    *The Operative Complaint and Sohal's Plea*

In 1997, the Santa Clara County District Attorney charged Sohal and several codefendants by complaint with two counts of attempted murder (§§ 664, subd. (a), 187; counts 1 and 2), assault with a firearm (§ 245, subd. (a)(2); count 3), and assault with a

---

[1] Undesignated statutory references are to the Penal Code.

deadly weapon or assault likely to produce great bodily injury (§ 245, subd. (a)(1); count 4). As to count 1, it was alleged that the attempted murder was committed willfully, deliberately, and with premeditation. (§ 189, subd. (a).) Multiple other enhancements, including gang enhancements and firearms enhancements, were alleged as to all counts.

In 2000, Sohal pleaded guilty to all counts and admitted multiple enhancements. During the change of plea hearing, the trial court advised Sohal as follows: "Do you understand if you are not a citizen of the United States this plea or these pleas today could have the result of your being deported from the United States. It could cause your re-entry to be refused and it could cancel any legalization or naturalization proceedings you have now or in the future." Sohal responded, "I want to fight for the INS case." The trial court replied, "You are entitled to fight and challenge. I need to advise you it's a possibility. [¶] Do you understand that?" Sohal responded, "Yes, your honor." By agreement of the parties, the trial court at sentencing struck the premeditation allegation alleged as to count 1 and further struck the enhancement that Sohal was armed with a handgun (§ 12022, subd. (a)(1)). In 2001, Sohal was sentenced to the agreed term of 15 years in prison.

**B.** *The Motion to Vacate*

In 2023, Sohal moved to vacate his convictions under section 1473.7, alleging that he had not meaningfully understood the immigration consequences of his plea. Ten years earlier, while in deportation proceedings, he had unsuccessfully petitioned to vacate his convictions by writ of habeas corpus.[2]

In support of his section 1473.7 motion, Sohal declared that he had been born in India in 1976, joined his father in the United States in 1993, and was a legal permanent resident at the time of his plea. Sohal's two brothers and mother also lived in the United

_____

[2] Section 1473.7 did not become effective until 2017. (Stats. 2016, ch. 739, § 1.)

States by the time of his plea. Sohal's goal had been to become a naturalized citizen of the United States, but he was detained by immigration authorities and placed in immigration removal proceedings upon his release from prison in 2012. Because his crimes were aggravated felonies under federal immigration law, Sohal was ordered deported from the United States in 2013 to India. Sohal now resides in Portugal with his wife, whom he married in 2021.

In his declaration, Sohal asserted that at the time he entered his plea, his attorney did not discuss with him that his crimes qualified as aggravated felonies and crimes involving moral turpitude, which are mandatory deportable offenses that resulted in the loss of his green card and permanent removal from the United States. Sohal further claimed that his attorney "never spoke to [him] about [his] immigration status or about any immigration concerns," he was not aware that the plea "would have such severe immigration effects on [him]," and that he "never had any reason to be concerned about being deported for accepting the plea" because his attorney never discussed "immigration status or sentencing concerns" with him.

Sohal attached various letters from friends and family members in support of his motion to vacate. Some family members opined that Sohal would not have taken the plea deal had he known that he would be deported. Others said they had been unaware that Sohal would be deported upon his release. A friend wrote that he had planned to go into business with Sohal—in the United States—upon Sohal's release from prison and that Sohal while in prison had been unaware he would be deported. Sohal's wife wrote that Sohal would not have accepted the plea had he known he would be deported because her father would not have agreed to their marriage. Sohal's father-in-law wrote that his "only condition" for his children's marriage was for his children to live nearby. Sohal's father-in-law explained that the marriage had been planned since 1997, to take place in 2000 when the wife-to-be turned 18.

3

The People opposed the motion to vacate, relying on Sohal's plea colloquy and his statements in support of his 2013 habeas corpus petition. At the change of plea hearing, Sohal had stated his intention to "fight . . . the INS case," which to the People indicated Sohal's knowledge that he faced serious immigration consequences. The People also argued that Sohal's 2013 account of his attorney's immigration advisement likewise reflected that Sohal at least knew he faced deportation, although he declared that he was unaware that his crimes were aggravated felonies making him ineligible for bail or cancellation of removal.

In his declaration in support of the habeas petition, Sohal did not claim to have been unaware that he faced deportation for his convictions but took issue with the scope of the immigration advice he had been given and the extent of his attorney's efforts to mitigate his immigration consequences by securing a more favorable result. He declared that he was "never informed by [his] attorney, or anyone else, of the *clear* immigration consequences of [his] plea." (Italics added.) Sohal asserted that he had been willing to serve more than 15 years in prison in exchange for a plea "that would not have rendered [him] deportable, or at least not an aggravated felon." He added that his attorney advised him that he "would be able to fight [deportation] later in immigration proceedings." Sohal declared that had he been aware of his ineligibility for bail or cancellation of removal, he would have sought an alternative immigration-safe disposition or would have exercised his right to go to trial instead of entering a plea that ended his chance of remaining in the United States with his family.[3]

---

[3] In May 2013, the trial court denied Sohal's petition for writ of habeas corpus after concluding that he did not state a prima facie case for relief. The trial court found that Sohal's declaration was self-serving, and there was no supporting evidence that if properly advised of the immigration consequences, Sohal would not have pleaded guilty.

## C.       *The Hearing on the Motion and the Trial Court's Denial*

At the April 2024 hearing on Sohal's motion to vacate, Sohal appeared only through counsel. Over the People's objection, the trial court accepted Sohal's declaration in support of his motion to vacate for the truth of the matters asserted: The court found that Sohal was unavailable to appear for the hearing and that his nonappearance was not willful."[4]

The sole witness, former prosecutor Mark Duffy, testified by video on behalf of the prosecution. Duffy had been assigned to Sohal's case as a member of the district attorney's gang unit. Although Duffy could not recall how Sohal had been apprehended, he testified that Sohal had initially fled to Canada after the crime. Duffy recalled that Sohal's defense counsel was competent and thorough but that the evidence against Sohal was strong. Duffy testified that he would have declined any counteroffers for an immigration-neutral disposition or a lengthier sentence in exchange for lesser charges. Public safety was always a consideration in settlement.

The trial court denied Sohal's motion to vacate. The trial court found that Sohal had not demonstrated prejudicial error because there was no "reliable, contemporaneous evidence from 2000 to support the [p]etitioner's preferences announced in [his] 2023" motion. The trial court further found that Sohal's assertion in his declaration that his attorney had never mentioned immigration consequences was "injured" by his 2012 declaration in support of his habeas corpus petition, which acknowledged that he had discussed eventual immigration proceedings with his defense counsel. The trial court thus concluded that the motion to vacate was supported by little beyond unsubstantiated and self-serving statements, and given the risk of an indeterminate prison sentence had he

---

[4] Sohal did not object to the court's consideration of Sohal's prior declaration in support of his 2013 petition for writ of habeas corpus.

been convicted of the charges as alleged, there was no reasonable basis to conclude that Sohal did not knowingly enter his plea.

Sohal timely appealed.

## II.    DISCUSSION

### A.    *Legal Principles and Standard of Review*

Section 1473.7, subdivision (a)(1) permits a defendant no longer eligible for habeas corpus relief to seek to vacate a conviction or sentence by showing that the conviction or sentence is "legally invalid due to prejudicial error damaging [the defendant's] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."[5]

"The defendant must first show that he did not meaningfully understand the immigration consequences of his plea.  Next, the defendant must show that his misunderstanding constituted prejudicial error.  '[P]rejudicial error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).)  The moving party must establish by a preponderance of the evidence both a lack of understanding of the immigration consequences of the plea and that there was prejudicial error.  (§ 1473.7, subd. (f)(1).)

---

[5] "Upon the request of the moving party, the court may hold the hearing without the personal presence of the moving party provided that it finds good cause as to why the moving party cannot be present."  (§ 1473.7, subd. (d).)  On appeal, the People do not question the trial court's decision to proceed without Sohal's participation or the decision to admit Sohal's declaration in support of the motion without cross-examination.  Although the trial court found that Sohal was "not willfully abstaining himself from these proceedings," it did address why Sohal could not submit to examination at least by video, much as Duffy had done.

6

When moving to vacate a conviction under section 1473.7, "[a] defendant must provide ' " 'objective evidence' " ' to corroborate factual assertions. [Citation.] Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.) Thus, "[i]t is not enough for the defendant simply to declare that he or she would not have accepted a plea that would result in deportation. [Citation.] Rather, the defendant must 'corroborate such assertions with "objective evidence." ' " (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1178 (*Curiel*).)

A trial court's ruling on a section 1473.7 motion is subject to independent review. (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) Applying this standard, we " 'exercise[ our] independent judgment to determine whether the facts satisfy the rule of law.' " (*People v. Vivar* (2021) 11 Cal.5th 510, 527 (*Vivar*).)

**B.**     ***The Immigration Consequences***

Under federal law, attempted murder, assault with great bodily injury, and assault with a firearm are all either aggravated felonies or crimes of violence that are aggravated felonies if a defendant is sentenced to at least one year imprisonment. (18 U.S.C. § 16(a) [defining "crime of violence" as an offense "that has as an element the use, attempted use, or threatened use of physical force against the person or property of another"]; 8 U.S.C. §§ 1101(a)(43)(A) [murder is an aggravated felony], (F) [defining aggravated felony as a crime of violence for which the term of imprisonment is at least one year] & (U) [defining aggravated felony as "an attempt or conspiracy to commit an offense described in this paragraph"]; see also *Gomez Fernandez v. Barr* (9th Cir. 2020) 969 F.3d 1077, 1090–1091 [murder]; *United States v. Vasquez-Gonzalez* (9th Cir. 2018) 901 F.3d 1060, 1063–1064, 1068 (*Vasquez-Gonzalez*) [§ 245, subd. (a)(1)]; *People v. Carrillo* (2024) 101 Cal.App.5th 1, 5 (*Carrillo*) [§ 245, subd. (a)(2)].) A person not a citizen of the United States who is convicted of an aggravated felony is ineligible for relief from

7

removal (including cancellation of removal (8 U.S.C. §§ 1229b(b)(1)(C), 1158(b)(2)(A)(ii) & (B)(i) [asylum]), and voluntary departure (8 U.S.C. § 1229c(a)(1)), subject to mandatory removal (8 U.S.C. § 1227(a)(2)(A)(iii)) in "expedited" proceedings (8 U.S.C. § 1228(c)), and is thereafter permanently inadmissible (8 U.S.C. § 1182(a)(9)).[6]

Thus, Sohal's guilty pleas to two counts of attempted murder, assault with a firearm, and assault with great bodily injury or with a deadly weapon rendered him subject to severe and mandatory immigration consequences—including deportation and permanent inadmissibility.

## C. *Misunderstanding of the Immigration Consequences*

Sohal argues that he did not meaningfully understand the immigration consequences of his plea because his counsel then did not adequately advise him. Because Sohal's declaration in support of his motion both lacks objective corroboration and is undermined by his own prior statements, he has not shown by a preponderance of the evidence that he lacked a meaningful understanding of his plea's immigration consequences. (See *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664.)

"[I]n deciding whether the defendant has shown error, the focus of our inquiry is on the defendant's own error in misunderstanding the immigration consequences of the plea." (*Curiel*, *supra*, 92 Cal.App.5th at p. 1176.) "[T]he key is the mindset of the defendant and not what an objectively reasonable person would have understood under the circumstances." (*Carrillo*, *supra*, 101 Cal.App.5th at p. 16.) And "[w]here

---

[6] Additionally, a conviction for a felony crime of moral turpitude would prevent Sohal from obtaining legal status through the petition of his lawful permanent resident mother. (8 U.S.C. §§ 1255(a) [alien who seeks to adjust status to lawful permanent resident must be admissible], 1182(a)(2)(A)(i)(I) & (ii)(II) [inadmissibility from crime of moral turpitude other than a petty offense]; see also *Safaryan v. Barr* (9th Cir. 2020) 975 F.3d 976, 981 [assault with deadly weapon or force likely to produce great bodily injury is crime of moral turpitude]; *Carter v. INS* (1st Cir. 1996) 90 F.3d 14, 18 [noting that attempted murder is a crime of moral turpitude].)

8

immigration law is ' "succinct, clear, and explicit" that the conviction renders removal virtually certain, counsel must advise his client that removal is a virtual certainty.' " (*People v. Manzanilla* (2022) 80 Cal.App.5th 891, 905.)

Here, Sohal bases his claim of misadvisement on his declaration that defense counsel never spoke to him about *any* immigration consequences.[7]  Although "[a] party seeking relief under section 1473.7 is not required to provide the declaration of plea counsel" (*Espinoza*, *supra*, 14 Cal.5th at p. 325), Sohal has provided no objective evidence to corroborate his factual assertions.  (*Carrillo*, *supra*, 101 Cal.App.5th at p. 17 ["[a] defendant's assertion as to his or her state of mind is not accepted at face value by courts evaluating a section 1473.7 motion"]; *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223–224 (*Cruz-Lopez*) ["[a]n allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures"], abrogated on a different ground as stated in *Carrillo*, *supra*, 101 Cal.App.5th 1, 6.)[8]

---

[7] In part, Sohal argues that the letters he submitted from friends and family in support of his motion to vacate also reflect he was unaware of the immigration consequences of his plea.  But these letters were admitted at the hearing on the motion to vacate "for the limited purpose as to show the defendant's connection and intertwined nature with the community in 2000, not for any other purpose."  Sohal does not challenge this evidentiary ruling on appeal.  And even assuming we can properly consider these letters as corroborating evidence, the letters submitted by Sohal are largely unsupportive of his claim because they are not reflective of *Sohal*'s state of mind at the time he entered his plea.  (See *Curiel*, *supra*, 92 Cal.App.5th at p. 1176.)

[8] Sohal argues that a defendant's declaration under section 1473.7 is only "self-serving and unreliable" if defendant alleges that his counsel provided ineffective assistance, citing *People v. Padron* (2025) 109 Cal.App.5th 950.  *Padron*, an appeal from a trial court's denial of a section 1473.7 motion to vacate, distinguished *Cruz-Lopez* on the basis that *Cruz-Lopez* addressed the showing for a Sixth Amendment claim of ineffective assistance of counsel.  (*Padron*, at p. 960, fn. 5.)  Indeed, "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel" (§ 1473.7, subd. (a)(1)), and whether counsel was effective or ineffective does not necessarily inform whether a defendant meaningfully understood the immigration consequences of his plea.  But as discussed *post*, Sohal's 2023 declaration was unreliable

To the contrary, the objective evidence contradicts his 2023 declaration asserting that no immigration consequences were discussed with him. Sohal's plea colloquy and his 2013 declaration show that he knew to expect that his plea would result in immigration proceedings: At the change of plea hearing, Sohal stated his commitment to "fight . . . the INS case," which suggested that at minimum he knew that deportation proceedings were inevitable, even if he hoped the outcome was not preordained. And Sohal's 2013 habeas corpus petition alleged that his "attorney advised [him] that [he] would be able to fight it later in immigration proceedings." Absent either objective corroboration or Sohal's explanation of the context of this advice, we decline to read the advice Sohal attributes to his counsel as encouragement that contesting deportation would be successful, rather than a bare acknowledgement that Sohal could, as a procedural matter, attempt to resist that outcome. These statements also call into question the credibility of Sohal's 2023 declaration that asserted that *no* immigration issues were raised with him. Rather, these statements suggested that deportation was specifically raised by counsel.

Sohal argues that his 2023 declaration is not inconsistent with his 2013 declaration. He acknowledges that his 2023 declaration that his attorney "never spoke to [him] about [his] immigration status or about any immigration concerns" appears absolute on its face. But Sohal insists that his broad statement in 2023 must be construed by reference to his more nuanced statement that defense counsel never discussed legal terms such as an "aggravated felony" or a "crime involving moral turpitude" with him, or that conviction of such crimes would result in the loss of his permanent residency status

---

not only because it is "self-serving" but because he had made prior inconsistent statements in the past. Furthermore, *Padron* in distinguishing *Cruz-Lopez* did not purport to hold that a defendant's own declaration is *not* self-serving or unreliable. " 'It is axiomatic that cases are not authority for propositions not considered.' " (*People v. Avila* (2006) 38 Cal.4th 491, 566.) And *Padron* ultimately observed that "in any event, Padron's declaration is corroborated by his counsel's notes." (*Padron*, at p. 960, fn. 5.)

and subsequent removal from the United States. We see no reason to read Sohal's declaration in such a manner, as doing so would essentially require us to ignore his assertion—until confronted with his 2013 declaration—that defense counsel never spoke to him about immigration concerns at all. Nothing in the 2023 declaration acknowledges Sohal's 2013 reference to having discussed "immigration proceedings" with his counsel and or his avowal in his plea colloquy that he would contest deportation in immigration court.

Sohal next argues that the trial court's section 1016.5 advisement at the plea hearing is not evidence that he meaningfully understood the immigration consequences because the advisement did not capture the full extent of consequences that he faced. We agree. The statutory immigration advisement given by the trial court does not by itself establish meaningful understanding of immigration consequences. (See *People v. Patterson* (2017) 2 Cal.5th 885, 895 [§ 1016.5 advisement does not operate as bar to withdraw plea].) What is significant about the plea colloquy is not the trial court's advisement but Sohal's response, personally acknowledging the immigration fight to come.

In sum, we have little else besides Sohal's declaration to support his claim that he was misadvised, and that declaration is contradicted by his own prior statements. On independent review, we therefore find that Sohal has not met his burden to demonstrate by a preponderance of the evidence that he did not meaningfully understand the consequences of his plea. (§ 1473.7, subd. (a)(1).)

**D.**     *Prejudicial Error*

But even assuming Sohal met his burden to demonstrate he misunderstood the immigration consequences of his plea, we find that Sohal has not shown by a preponderance of the evidence that there is a "reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529.)

When considering this factor, courts must consider the totality of the circumstances and factors relevant to the inquiry include " 'the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 320.) "Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial." (*Ibid.*) "[W]hile the probability of obtaining a more favorable result at trial may be one factor a court considers in determining prejudice, it is not controlling or necessarily even the most important factor courts consider." (*People v. Lopez* (2022) 83 Cal.App.5th 698, 714–715.) "[R]elief should be granted if the court . . . determines the defendant would have chosen not to plead guilty or nolo contendere, even if the court also finds it not reasonably probable the defendant would thereby have obtained a more favorable outcome." (*People v. Martinez* (2013) 57 Cal.4th 555, 559; see also *People v. Soto* (2022) 79 Cal.App.5th 602, 610; *People v. Mejia* (2019) 36 Cal.App.5th 859, 871 (*Mejia*) [prejudice occurs when there is a reasonable probability a person would not have pleaded guilty and would have risked going to trial "even if only to figuratively throw a ' "Hail Mary" ' "].)

We turn first to Sohal's potential sentence had he gone to trial. (See *Espinoza*, *supra*, 14 Cal.5th at p. 320.) Sohal makes a conclusory allegation in his declaration that had he known that he would face severe immigration consequences, he would have "insisted on proceeding to trial in [his] case." But Sohal was charged in count 1 with willful, premeditated, and deliberate attempted murder, an offense that because of the premeditation allegation carried a potential indeterminate sentence of life, albeit with the possibility of parole. (§ 664, subd. (a).) The negotiated plea agreement included *striking* the premeditation allegation and imposing a determinate term of 15 years in prison.

There was a substantial difference between the negotiated term and the potential indeterminate life term had the case gone to trial and resulted in a conviction. We agree that a defendant, even in the face of long odds and lifetime penal consequences, may yet choose trial over certain deportation. But Sohal does not meaningfully acknowledge in his declaration the potential cost of going to trial and how the possibility of not just a longer sentence but imprisonment for life would have factored into his decision to accept a plea. That Sohal originally fled the United States following the commission of the offense belies his present intimation that his ties to this country outweighed his interest in minimizing his time in prison. The disparity between the severe sentence he could have faced had he gone to trial and the negotiated 15-year term weighs against a finding that it is reasonably likely that he would have rejected the plea.

Next, we examine whether there was a possibility of a more immigration-neutral disposition. (*Espinoza*, *supra*, 14 Cal.5th at p. 320.) Whether Sohal would have rejected the plea is in part informed "by whether [he] would have had reason 'to expect or hope that a plea deal without immigration consequences 'would or could have been negotiated' " (*id*. at p. 324), and there is little evidence Sohal could have had reason to expect a more immigration-neutral disposition. In Sohal's case, Duffy expressly testified at the hearing that he would have declined any immigration-neutral offers or any offers where Sohal would have received more favorable immigration treatment. (See *Carrillo*, *supra*, 101 Cal.App.5th at p. 22 [no prejudicial error in part because the defendant did not identify an offense "that would have lacked adverse immigration consequences or addressed the likelihood a plea to such an offense would have been accepted by the prosecutor"].) In fact, because *all* the charges that Sohal faced were for either aggravated felonies or crimes of violence that would have turned into aggravated felonies had the sentence been one year or more,[9] Sohal would have received a more favorable

---

[9] On appeal, Sohal posits that a more immigration-neutral disposition would have been possible had he pleaded guilty only to assault with a firearm (count 3; § 245,

13

immigration disposition *only* under certain narrow circumstances: such as if the trial resulted in an acquittal on all counts, if he was acquitted of the attempted murder charges and the sentences for his remaining convictions were less than one year, or if the prosecutor amended the charges to charge Sohal with offenses that are not aggravated felonies or crimes of moral turpitude.[10]

Sohal nonetheless points to his connections to the United States as corroborating evidence of prejudicial error. "Ties to the United States are an important factor in evaluating prejudicial error under section 1473.7 because they shed light on a defendant's immigration priorities." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.) Sohal was born in India in 1976, came to the United States in 1993, and was a legal permanent resident at the time of his plea in 2000. Sohal committed the offenses at issue in 1997, only four years after he came into the country. While not insubstantial, Sohal's ties to the country were not particularly strong at the time he entered his plea. (Cf. *id.* at pp. 322–323 [Espinoza had lived in California for 23 years at the time of plea and had wife and children who were United States citizens]; *Vivar*, *supra*, 11 Cal.5th at p. 530 [Vivar was brought to the

---

subd. (a)(2)) and assault with a deadly weapon or assault likely to produce great bodily injury (count 4; § 245, subd. (a)(1)) for an alternate sentence of 14 years. But as we have explained, both are crimes of violence that become aggravated felonies upon imposition of at least one year in confinement. (See *Carrillo*, *supra*, 101 Cal.App.5th at p. 5 [assault with a firearm is a crime of violence]; *Vasquez-Gonzalez*, *supra*, 901 F.3d at pp. 1063–1064, 1068 [assault likely to produce great bodily injury].) Recently, the Ninth Circuit held in *United States v. Gomez* (9th Cir. 2024) 115 F.4th 987 that assault with a deadly weapon under section 245, subdivision (a)(1) is not a crime of violence because the statute "sweeps in reckless uses of force." (*Id.* at p. 996.) But the Ninth Circuit recently granted the government's petition for rehearing en banc, vacating this prior decision and leaving *Vasquez-Gonzalez* as controlling precedent in the Ninth Circuit. (*United States v. Gomez* (9th Cir. 2025) 133 F.4th 1083.)

[10] During the hearing on the motion to vacate, Sohal offered to resolve the case by pleading to a violation of section 32 (accessory) in exchange for vacatur of all four counts. The prosecutor rejected this offer.

United States as a six year old and remained in the country for 40 years and had children, grandchildren, and a wife who were United States citizens].)

Sohal argues that the family support letters submitted in support of the motion to vacate demonstrate his strong, personal attachment to the country. Sohal points to the letters from his wife and father-in-law explaining how his marriage had ben premised on his ability to stay near family. The family letters bolster Sohal's claim that he had a vested interest in remaining in the United States, but the letters shed no light on whether, for example, his father-in-law would have preferred that Sohal face the possibility of an indeterminate life term by proceeding to trial.

In sum, Sohal largely fails to provide corroborating evidence to support his self-serving declaration that he would have declined the plea. (*Cruz-Lopez*, *supra*, 27 Cal.App.5th at p. 224 ["declaration by defendant is suspect by itself"].) Although a declaration by the defendant is relevant evidence to whether prejudicial error occurred (*Espinoza*, *supra*, 14 Cal.5th at p. 325), as we have stated *ante*, a defendant's claims require "corroboration and objective evidence because a declaration by [the] defendant is suspect by itself." (*Cruz-Lopez*, at p. 224; *Mejia*, *supra*, 36 Cal.App.5th at p. 872 ["[i]n a postconviction setting, courts should not simply accept a defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences' "]; see also *In re Alvernaz* (1992) 2 Cal.4th 924, 938 ["a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice" for a claim of ineffective assistance of counsel].) "It is not enough for the defendant simply to declare that he or she would not have accepted a plea that would result in deportation." (*Curiel*, *supra*, 92 Cal.App.5th at p. 1178.)[11]

---

[11] We note that in denying Sohal's 2013 petition for habeas corpus, the trial court found that Sohal failed to show that he would have declined the plea deal. (See *People v.*

15

After independently reviewing the record, we find that Sohal has not adequately shown that there is a reasonable probability that he would have rejected the plea had he understood the actual or potential immigration consequences.  (*Vivar*, *supra*, 11 Cal.5th at p. 529.)

## III.  DISPOSITION

The order denying Sohal's motion to vacate is affirmed.

---

*DeMontoya* (2022) 85 Cal.App.5th 1159, 1175 ["[c]ollateral estoppel prohibits relitigation of issues argued and decided on their merits in prior proceedings"].)  The prosecution did not raise collateral estoppel below, forfeiting the issue.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

_____
LIE, J.

WE CONCUR:

_____
GROVER, Acting P. J.

_____
BROMBERG, J.

*People v. Sohal*
H052523